# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| RODNEY SMITH, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 2:18-cv-02698-TLP-tmp |
| v. ) | |
| ) | |
| GRADY PERRY, Warden, ) | |
| ) | |
| Respondent. ) | |

**ORDER DISMISSING PETITION, DENYING CERTIFICATE OF APPEALABILITY, CERTIFYING THAT ANY APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Rodney Smith petitions pro se under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody.[1]  (ECF No. 1.)  Respondent has filed the state court record and answered the petition.  (ECF Nos. 11 & 12.)  Petitioner raises a single claim, asserting that trial counsel performed deficiently and provided ineffective assistance of counsel in the state court proceedings.  (ECF No. 1 at PageID 5.)

For the reasons below, the Court **DISMISSES** the petition and **DENIES** a certificate of appealability.  The Court also **CERTIFIES** that Petitioner has no good faith basis for appeal and **DENIES** Petitioner leave to proceed in forma pauperis on appeal.

**I.    State Court Procedural History**

Following a trial in Shelby County Tennessee Criminal Court, a jury convicted Petitioner of attempted especially aggravated robbery, aggravated burglary, employment of a firearm with

---

[1] Petitioner is an inmate at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee.  His Tennessee Department of Correction ("TDOC") prisoner number is 14209.

intent to commit a felony, and possession of a handgun as a felon.  (ECF Nos. 11-1 at PageID 55–59; 11-5 at PageID 594–95; 11-10 at PageID 785.)

The Tennessee Court of Criminal Appeals ("TCCA") provided this summary of Petitioner's trial:

> A Shelby County grand jury indicted the petitioner for one count of especially aggravated robbery of victim Derrick Cornell, one count of aggravated burglary of Mr. Cornell, one count of assaulting victim Shaneka Carruthers, one count of employment of a firearm during the commission of a dangerous felony against Mr. Cornell, one count of convicted felon in possession of a handgun as a result of a prior rape conviction, and one count of convicted felon in possession of a handgun as a result of a prior felony drug conviction.  The grand jury indicted codefendant Lorenzo Horne for one count of facilitation of especially aggravated robbery and one count of accessory after the fact.  The petitioner and Mr. Horne were tried separately.
>
> At the petitioner's trial, the jury heard testimony that Mr. Morris Mitchell, who was not called as a witness, was an ordained minister that owned a house located at 3055 North Trezevant from which he sold drugs and operated a prostitution ring.  The petitioner and Mr. Mitchell had known one another a long time, and the petitioner frequented Mr. Mitchell's house for the purpose of smoking marijuana.  The evening of November 9, 2013, Mr. Mitchell called the petitioner and asked him to come over and bring a scale to weigh narcotics.  According to the petitioner, who testified at trial, when he arrived at the house, Mr. Mitchell met him at the car.  Mr. Mitchell, the petitioner, and Mr. Horne, who was already present at the house, walked to the side of the house and entered a room that Mr. Mitchell unlocked from the outside.  Once inside the room, the petitioner put the scale on the table.  He heard angry voices coming from a back room.  Mr. Cornell then charged into the room naked and hit the petitioner in the head with a gun.  The two fought, and the petitioner was shot.  Ms. Carruthers, who was only partially clothed, entered the room while the men were fighting.
>
> The petitioner denied robbing anyone that evening.  The petitioner described the house as "a dope house" and testified that Mr. Mitchell "pimps girls" out of it.  For these reasons, Mr. Mitchell does not allow anyone in the backroom of the house.
>
> Ms. Carruthers also testified at the petitioner's trial.  She admitted to being a prostitute and indicated she and other women brought men back to a room in Mr. Mitchell's house, had sex with them in exchange for money, and gave Mr. Mitchell a portion of the money earned "as a result of doing business" in his house.  The evening in question, Ms. Carruthers brought Mr. Cornell to Mr. Mitchell's house.  Mr. Cornell paid Ms. Carruthers for sex.  Ms. Carruthers gave Mr. Mitchell a

2

portion of the money received from Mr. Cornell and bought narcotics from Mr. Mitchell. Ms. Carruthers then brought Mr. Cornell to the back room in Mr. Mitchell's house.

While in the back room with Mr. Cornell, Ms. Carruthers heard a knock on the door and thought it was Mr. Mitchell. Both Ms. Carruthers and Mr. Cornell were naked. Mr. Cornell opened the door, and the petitioner hit him in the head with a gun.

Mr. Horne also testified at trial but offered a slightly different version of events. Mr. Horne confirmed the petitioner, Mr. Mitchell, Ms. Carruthers, Mr. Cornell, and a couple others were present in Mr. Mitchell's home the night of the robbery. The petitioner was smoking marijuana, and Mr. Horne was smoking crack cocaine. Mr. Mitchell left the house, and the petitioner pulled out a gun and indicated he was going to rob Mr. Cornell, who was in the back room with Ms. Carruthers. Mr. Horne told him not to do it, but the petitioner left the room and walked to the side of the house. Mr. Horne then heard gun shots, and the petitioner asked Mr. Horne for help because Mr. Cornell was "fixin' to kill" him. Mr. Horne tried to kick in the door, but it did not open. Mr. Horne then left in a truck, found Mr. Mitchell, and brought him back to the house. Mr. Mitchell opened the door to the back room, and the petitioner exited. The petitioner had been shot in the left knee, so Mr. Horne drove the petitioner to the petitioner's mother's house, and she drove both men to the hospital. The police detained Mr. Horne while he was standing outside the hospital.

After hearing testimony from multiple witnesses, the jury found the petitioner guilty of attempted especially aggravated robbery, aggravated burglary, employment of a firearm during the commission of a dangerous felony, convicted felon in possession of a handgun, and convicted felon in possession of a firearm. The jury found the petitioner not guilty of assault on Ms. Carruthers. The trial court merged the convictions for possession of a handgun and possession of a firearm. The petitioner then waived his right to file a motion for a new trial and a direct appeal in exchange for an effective sentence of twenty-three years to be served at thirty-five percent. Following a hearing, the trial court found the petitioner freely and voluntarily entered into this agreement.

*Smith v. State*, No. W2017-00406-CCA-R3-PC, 2018 WL 931156, at *1–2 (Tenn. Crim. App. Feb. 15, 2018), *perm app. denied*, (Apr. 23, 2018).

Petitioner petitioned pro se for post-conviction relief in Shelby County Criminal Court under the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101-122. (ECF No. 11-1 at PageID 61–68.) The state court appointed him counsel. Petitioner's counsel then

3

amended the petition. (*Id.* at 81–85.) The post-conviction court held an evidentiary hearing and denied relief in January 2017. (*Id.* at PageID 87.) Petitioner appealed. (*Id.* at PageID 88–89.) And the TCCA affirmed. *Smith v. State*, 2018 WL 931156, at *6.

The Court will now turn to the federal habeas proceedings.

### III. Federal Court Procedural History

Petitioner petitioned for habeas relief in this Court in October 2018. (ECF No. 1.) As stated above, Petitioner raises a single claim, asserting that trial counsel performed deficiently and provided ineffective assistance of counsel in the state court. (*Id.* at PageID 5.) Petitioner alleges that his trial counsel "refuse[d] to call a key witness that could have clear[ed] [Petitioner] on the aggravated burglary" charge. (*Id.*) According to Petitioner, "the key witness would have stated that [Petitioner] had his permission to be in the home." (*Id.*) Petitioner attached to his petition a letter written by Pastor Morris Mitchell in December 2015, which states:

> I would like to submit this letter in regards to an accusation that was brought against Rodney D. Smith. Mr. Smith had an appointment with me and did not break into my home. He knocked on the door and I opened the door. The week of Mr. Smith's trial I was out of town. No one contacted me concerning this matter. I was told by an associate that he was incarcerated for breaking into my home. That is not true. Therefore, I am writing this letter in hope that this information will be accepted as evidence for Mr. Smith.

(ECF No. 1-1 at PageID 12.)

Petitioner also asserts that the witness signed a statement to that effect. (ECF No. 1 at PageID 5.) Petitioner adds that the alleged victim "did not live in the home" but "was a guest" there. (*Id.*) Petitioner attached the purported witness statement to his petition. (ECF No. 1-1 at PageID 12.) Because the TCCA reviewed this issue, Petitioner has exhausted his available state court remedies on this claim.

### III. The Evidence

On Petitioner's post-conviction appeal, the TCCA provided the following summary of the evidence presented at the post-conviction hearing:

> During the post-conviction hearing, the petitioner testified that he has known Mr. Mitchell for thirty-five years, and Mr. Mitchell invited him to his house the day of the attempted burglary. Once the petitioner arrived, he called Mr. Mitchell from his car to let him know he was outside. Mr. Mitchell let the petitioner in his house, and the two discussed business. Mr. Mitchell then left to go to the store, and the petitioner stayed at the house.
>
> The petitioner admitted Mr. Cornell gave a statement to the police indicating he rented a room from Mr. Mitchell. At trial, however, Mr. Cornell testified he resided someplace else but was present in a room in the back of Mr. Mitchell's house with Ms. Carruthers on November 9, 2013, when the petitioner knocked on the door. The victim opened the door wearing only his socks, the petitioner pulled out a gun, and the men got into an altercation. The petitioner admitted that the testimony of Mr. Horne and Ms. Carruthers placed him at the crime scene. The petitioner also admitted the jury heard testimony at trial that the gun recovered from the scene did not have his fingerprints on it.
>
> According to the petitioner, Mr. Mitchell was a family friend. Following the petitioner's arrest, his family members tried to contact Mr. Mitchell but were unable to do so. Eventually, Mr. Mitchell learned the petitioner had been arrested following the altercation at his house and went to the petitioner's mother's house to discuss the situation.
>
> The petitioner claims he told trial counsel about Mr. Mitchell and that he wanted him to testify at trial to dispute the burglary charge. Despite the petitioner's request, trial counsel did not attempt to contact Mr. Mitchell, never subpoenaed Mr. Mitchell to trial, and did not call Mr. Mitchell as a witness at trial. When the petitioner asked trial counsel why he did not attempt to contact Mr. Mitchell, trial counsel responded, "I don't like him."
>
> Mr. Mitchell also testified at the post-conviction hearing. According to Mr. Mitchell, he and another individual own the property at issue. There are four houses on the premises that are used as a ministry. Mr. Mitchell invited the petitioner to one of the houses on November 9, 2013, to discuss "some quiet things." The petitioner arrived at 6:30 p.m. and was alone. The two went into the front room of the house to talk. Mr. Mitchell did not give the petitioner permission to enter any other areas of the house.
>
> Mr. Horne arrived at the house about twenty minutes later and entered the front room. Mr. Cornell, Ms. Carruthers, and two others arrived approximately

5

thirty minutes later. Mr. Cornell and Ms. Carruthers went into a back room that Mr. Mitchell uses for counseling purposes. The room can only be accessed through a door facing the outside of the house. Mr. Mitchell denied knowing what Mr. Cornell and Ms. Carruthers were doing in the room.

Mr. Mitchell and the petitioner were in the front room for about an hour before Mr. Mitchell left for the store. When he returned approximately thirty minutes later, Mr. Mitchell could hear the victim screaming in the back room. The victim refused to open the door. When the police arrived, they instructed Mr. Mitchell to kick in the door. Mr. Mitchell did as instructed and found the victim inside the room and naked. The room was covered in blood. The police attempted to get a statement from Mr. Mitchell that evening, but he told them he had been at the store and had no knowledge of what happened while he was gone. The police never questioned Mr. Mitchell again.

Mr. Mitchell testified that following the petitioner's arrest, he went to an attorney's office with the petitioner's mother. He told the attorney he did not have any knowledge of what transpired at the house after he left. He could not remember the attorney's name and did not remember whether he ever spoke with trial counsel. Mr. Mitchell did not know about the trial setting, but he went to the sentencing hearing with the petitioner's mother.

Mr. Mitchell would have attended the trial had the family asked him to be present. A subpoena would have been unnecessary. However, he could not have testified as to the events that transpired while he was at the store.

Trial counsel testified last. Trial counsel has been licensed and practicing law since 1974 and has had a criminal defense practice in Tennessee since 1984. Trial counsel tries approximately one jury trial per month and has represented criminal defendants in everything from DUI to capital murder cases. He was hired by the petitioner's mother to represent the petitioner on the charges of especially aggravated robbery, aggravated burglary, aggravated assault, and employing a firearm felony.

Trial counsel spoke with the petitioner's family members regarding Mr. Mitchell, but they never established anything useful Mr. Mitchell would add to the petitioner's defense. Trial counsel asked the petitioner's family members to bring Mr. Mitchell to the office so he could speak with him regarding the events that transpired at his house, but no one could get into contact with him. Trial counsel does not remember whether he ever spoke with Mr. Mitchell

Trial counsel and the petitioner also discussed Mr. Mitchell. Trial counsel testified:

> [The petitioner] told me that Mr. Mitchell owned the house where he was; that it was a dope house and a prostitute house; and

6

that's where people gathered all the time and that's what was going on that night. They were doing drugs, and he went in there to buy drugs, got into it with somebody in the house, and all kinds of things were going on at that location at that time.

Based on his conversations with the petitioner and his family members, trial counsel decided not to call Mr. Mitchell as a witness at trial. Even though the property belonged to him, when reviewing discovery, trial counsel saw that Mr. Mitchell had been interviewed by the police and was not present when the incident took place. All actions that resulted in criminal charges against the petitioner occurred in Mr. Mitchell's absence.

Trial counsel indicated the petitioner testified at trial and was able to explain his version of the events. When doing so, the petitioner was articulate, animated, and able to speak directly to the jury. The jury's decision was based on its assessment of the credibility of the witnesses. Trial counsel testified that the petitioner had his day in court and "[t]o this day, I can think of nothing that we should have done or could have done that was not done in [the petitioner's] case."

After considering the above testimony, the post-conviction court found the petitioner failed to carry his burden of proving either deficient performance or prejudice and, therefore, failed to prove ineffective assistance of counsel. In its written order denying the petition for post-conviction relief, the post-conviction court incorporated these oral findings of fact made at the conclusion of the hearing:

> And I'm convinced that [trial counsel] knew exactly [what] he was doing; he did the best that he could. I don't see, in any respect, where he's deficient[.] . . . You know, the two-prong thing—you have to show he was deficient and then that it—that [the petitioner] was prejudiced by this. I don't see where he was prejudiced at all—not a bit. I think putting Mr. Mitchell on—first of all, I don't think Mr. Mitchell was going to come in here and admit that this was a house where they do bad things—being a preacher and all that, so I mean, everyone on the jury knew what they were doing back there. . . . [I]f you intimate that the preacher knew about it, that's going to put egg all over his face. . . . But, coincidentally, he was gone at the time of the whole event. No one is going to help [the petitioner]. His testimony today would have hurt Mr. Smith much worse because he, being a preacher—being the owner of the house—confirmed that they were all together when they left and said, "We're going back here in this back room," and he said, "well, yeah, [the petitioner] was there." That shows [the petitioner] knew that they were back there.

This timely appeal followed.

7

*Smith v. State*, 2018 WL 931156, at *2–4.

With this in mind, the Court will now turn to the legal standards governing Petitioner's habeas petition.

### III.     Legal Standards

Federal courts may issue habeas corpus relief to persons in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). But a federal court has limited authority and may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

#### A.     Exhaustion and Procedural Default

A federal court may not issue a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254(b) and (c), a petitioner seeking federal habeas relief must first present the claims in his petition to the state courts. *Id.* The petitioner must "fairly present"[2] each claim to all levels of state court review, including the state's highest court on discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). That said, a petitioner need not present to all levels of the state court if the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999).

---

[2] To exhaust each claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

Tennessee has done that. Indeed, Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003). Under Rule 39, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies.'" *Id.* (quoting Tenn. Sup. Ct. R. 39); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

There is also a procedural default doctrine much like the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground (such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim), the procedural default doctrine ordinarily bars a petitioner from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment." (internal quotation marks and citation omitted)).[3] In general, a federal court "may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

---

[3] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. *Walker*, 562 U.S. at 315. A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed." *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)); *see also Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015). "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Walker*, 562 U.S. at 316 (internal quotation marks and citations omitted).

If the procedural default doctrine bars a claim at the state level, the petitioner must show cause to excuse his failure to present the claim. *Schlup v. Delo*, 513 U.S. 298, 320–21 (1995); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). And he must show (1) actual prejudice stemming from the constitutional violation, or (2) that a failure to review the claim will lead to a fundamental miscarriage of justice. *Schlup*, 513 U.S. at 320–21. For the latter, the petitioner must establish that a constitutional error has probably led to the conviction of a person who is innocent of the crime. *Id.* at 321; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

### B. Merits Review

Under § 2254(d), where a state court has adjudicated a claim on the merits, a federal court should grant habeas relief only if the state's adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner carries the burden of proof on this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under § 2254(d)(1), a court limits its review to the record that the state court used to adjudicate the claim on the merits. *Cullen*, 563 U.S. at 181. A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13

10

(2000). A state court makes an "unreasonable application" of federal law occurs when it "identifies the correct governing legal principle from" the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412–13. So the state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue. *Id.* at 409. And the habeas court may not issue the writ just because, "in its independent judgment," it determines that the "state court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411) (internal quotation marks omitted).

There is little case law addressing how to determine whether, under § 2254(d)(2), a state court based its decision on "an unreasonable determination of the facts." In *Wood v. Allen*, the Supreme Court noted that a state-court factual determination is not "unreasonable" only because the federal habeas court would have reached a different conclusion.[4] 558 U.S. 90, 301 (2010). In *Rice v. Collins*, the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination." 546 U.S. 333, 341–42 (2006).

The Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not insatiable" and has emphasized that, under § 2254(e)(1), the federal court presumes that the state court's factual determination is correct absent clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010). A federal court will not overturn a state

---

[4] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." 558 U.S. at 299. The Court found it unnecessary to reach that issue and left it open "for another day." *Id.* at 300–01, 304 (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006) (recognizing that it is unsettled whether there are some factual disputes to which § 2254(e)(1) does not apply)).

11

court adjudication on factual grounds unless objectively unreasonable given the evidence presented during the state court proceeding. *Id.*; *see also Hudson v. Lafler*, 421 F. App'x 619, 624 (6th Cir. 2011) (same).

### C. Ineffective Assistance of Counsel

The standards from *Strickland v. Washington*, control a claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel. 466 U.S. 668, 687 (1984). To succeed on such a claim, a petitioner must show two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense." *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

Plus the Sixth Circuit noted recently that this standard is "even more difficult to meet in habeas cases, where the review that applies to *Strickland* claims is 'doubly deferential.'" *Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (internal quotation marks and citation omitted).

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A court considering a claim of ineffective assistance applies a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

To show prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.[5]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Instead, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687; *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) (stating that "*Strickland* does not require the State to 'rule out'" a more favorable outcome to prevail, but "places the burden on the defendant, not the State, to show a reasonable probability that the result would have been different." (internal quotation marks omitted)).

A federal court's deference to a state-court decision under 28 U.S.C. § 2254(d) increases when reviewing an ineffective assistance claim.  According to the Supreme Court in *Harrington*:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. at 105 (internal citations and quotation marks omitted).

The Court will now turn to Petitioner's claim of ineffective assistance of counsel.

---

[5] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel performed deficiently.  *Strickland*, 466 U.S. at 697.

13

## V.  Analysis of Petitioner's Ineffective Assistance Claim

Petitioner asserts here that trial counsel in the state criminal court performed deficiently and provided ineffective assistance. (ECF No. 1 at PageID 5.) Respondent acknowledges that "Petitioner fully exhausted this claim in state court, and it is properly before this Court on federal habeas review." (ECF No. 12 at PageID 817.) Petitioner alleges that his trial counsel "refuse[d] to call a key witness that could have clear[ed] [Petitioner] on the aggravated burglary" charge. (ECF No. 1 at PageID 5.) According to Petitioner, "the key witness would have stated that [Petitioner] had his permission to be in the home." (*Id.*) Petitioner states that the alleged victim "did not live in the home" but "was a guest" there. (*Id.*) Respondent counters that Petitioner cannot show that the TCCA's decision was either contrary to, or an unreasonable application, of *Strickland*. (ECF No. 12 at PageID 820.)

The TCCA applied the *Strickland* standard to Petitioner's ineffective assistance of counsel claim, and stated:

> Here, the petitioner has failed to prove either prong of the *Strickland* test. Trial counsel made a strategic decision not to call Mr. Mitchell as a witness at trial, and we give deference to the tactical decisions of counsel made after adequate trial preparation. The petitioner did not present any evidence at the post-conviction hearing that trial counsel was not adequately prepared for trial. To the contrary, trial counsel spoke with both the petitioner and the petitioner's mother regarding Mr. Mitchell. Trial counsel asked the petitioner's mother to bring Mr. Mitchell to his office so they could speak, and she could not locate Mr. Mitchell. It is unclear as to whether Mr. Mitchell and trial counsel ever met to discuss Mr. Mitchell's potential testimony, but based on the information contained in the police report and relayed to trial counsel by the petitioner, trial counsel determined Mr. Mitchell's testimony would not be useful to the petitioner's case. The petitioner has not shown trial counsel's decision not to call Mr. Mitchell as a witness at trial amounted to deficient performance.
>
> The petitioner has further failed to prove the alleged deficient performance prejudiced the defense of his case. Based on his testimony at the post-conviction hearing, Mr. Mitchell was not present during the altercation leading to the petitioner's arrest. He would have testified, however, that the petitioner was present in the home with Ms. Carruthers, Mr. Cornell, and the others at the time he left for

14

> the store.  Further, while he owned the house and invited the petitioner over that evening, he did not give him permission to enter the back room of the house, which could only be accessed via a separate entrance on the outside of the house.  Therefore, the petitioner has not shown the result of his trial would have been different if trial counsel had called Mr. Mitchell to testify.  The petitioner is not entitled to relief on this issue.

*Snith v. State*, 2018 WL 931156, at *6.

Petitioner does not explain how the TCCA's decision went against or unreasonably applied *Strickland*.  And as a result, Petitioner has not satisfied his burden of showing that the decision was objectively unreasonable.  The Court presumes that the state court's factual findings are correct without any clear and convincing evidence to the contrary.  28 U.S.C. §§ 2254(d)(2), 2254(e)(1).  And Petitioner provides no evidence to refute that presumption of correctness.  Petitioner argues in his reply that "counsel's omission cannot have been the result of any kind of strategy."  (ECF No. 14 at PageID 828.)  But this sort of conclusory allegation is not enough to establish that his trial counsel performed deficiently, let alone any resulting prejudice.

Mitchell's letter does not counter the TCCA's conclusions.  For example, Mitchell's letter does not state that he gave Petitioner permission to access the back room of the house where the crimes occurred.  This is especially true because one could only access that space in the house by a separate entrance on the outside of the house.  And the letter does not state that Mitchell was home when the crimes occurred.  This Court has reviewed the transcripts for Petitioner's trial and post-conviction hearing.  (ECF Nos. 11-3; 11-4; 11-5; 11-7.)  And considering this review, the Court finds that the TCCA did not base its decision on an unreasonable determination of the facts in the state court proceedings.

At bottom, Petitioner has not shown that his trial counsel performed deficiently or that any prejudice resulted.  And Petitioner has not shown that the TCCA's decision relied on an

15

unreasonable factual determination.  Petitioner therefore is not entitled to habeas relief.  The Court therefore **DENIES** this claim and **DISMISSES WITH PREJUDICE** the habeas petition.  The Court will enter judgment for Respondent.

## VI. Appellate Issues

A petitioner is not always entitled to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).  In fact, the Court has to issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. *See* Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.  A petitioner may not take an appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  The court may issue a COA only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must reflect the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2)–(3).  A petitioner makes a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (holding a prisoner must show that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that the issues presented warrant encouragement to proceed).

Nor does the petitioner have to show that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same).  But courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Slack*, 537 U.S. at 337).

Petitioner's claim here lacks merit. Because any appeal by Petitioner on the issue raised in this petition does not deserve attention, the Court **DENIES** a certificate of appealability.

For the same reason, the Court also finds that Petitioner lacks a good faith basis to assert this claim on appeal. The Court therefore **CERTIFIES** under Federal Rule of Appellate Procedure 24(a) that any appeal here would not be taken in good faith, and also **DENIES** leave to appeal in forma pauperis.[6]

**SO ORDERED**, this 24th day of March, 2022.

                                              s/Thomas L. Parker
                                              THOMAS L. PARKER
                                              UNITED STATES DISTRICT JUDGE

---

[6] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or move to proceed in forma pauperis and file a supporting affidavit in the Sixth Circuit Court of Appeals within 30 days of the date of entry of this order. See Fed. R. App. P. 24(a)(5).